UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ALLEN JOHNSON, ET AL.                              CIVIL ACTION NO. 16-1543

VERSUS                                             JUDGE S. MAURICE HICKS, JR.

CHESAPEAKE LOUISIANA, LP                           MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court are two Motions for Partial Summary Judgment. See Record Document 24 & 28. The first is a Motion for Partial Summary Judgment (Record Document 24) filed by Defendants, Chesapeake Louisiana, L.P. and Chesapeake Operating, L.L.C. (collectively "the Chesapeake Defendants"). The second is Cross-Motion for Partial Summary Judgment (Record Document 28) filed by Plaintiffs Allen Johnson, Linda Johnson, Donald A. Crosslin, Jr., Mary Jo Gragg, Rodney M. Hudson, Clifton Layman, Alfred R. Meshell, Sherman R. Meshell, David E. Oliver, Tracy Oliver, Laura S. Pendleton, Andrew L. Piccolo, Karla S. Piccolo, Randall S. Rodgers, Freddie P. Spohrer, Tim G. Taylor, Charles R. Waldon, Rexford Galen White, James Shope, Donna Shope, Charlotte McCune, and Jerry McCune. The motions are fully briefed and the Court heard oral arguments on the cross-motions. The sole legal issue to be decided in the cross-motions is whether Plaintiffs, twenty-two unleased mineral owners (the "UMO Plaintiffs"), are responsible for a proportionate share of post-production costs.[1] For the reasons set forth below, this Court holds that under Louisiana Revised Statute 30:10(A)(3), post-production costs cannot be recovered by an operator from an unleased

---

[1]The Chesapeake Defendants previously argued in their motion that post-production costs were operating costs. Yet, as noted in both the briefing and during oral argument, the Chesapeake Defendants have now abandoned this argument.

mineral owner's share of production proceeds. Thus, the UMO Plaintiffs' Cross-Motion for Partial Summary Judgment (Record Document 28) is **GRANTED** and the Chesapeake Defendants' Motion for Partial Summary Judgment (Record Document 24) is **DENIED**.

## BACKGROUND

The Chesapeake Defendants were at all times relevant the operator of the Kelley Well, which is the unit well of the HA RA SU86 unit ("the Unit"). The UMO Plaintiffs are landowners within the Unit and own a non-operating, unleased interest in the Unit. In their Petition, the UMO Plaintiffs allege, among other claims, that the Chesapeake Defendants improperly deducted certain post-production costs from the UMO Plaintiffs' share of production proceeds. In particular, Plaintiffs contend that Chesapeake has violated Louisiana law by charging or netting-out post-production costs from Plaintiffs' share of production secured from the Kelley Well. These post-production costs generally include gathering, compression, treatment, processing, transportation, and dehydration costs.

The Chesapeake Defendants moved for partial summary judgment, alleging that their deductions for post-production costs are authorized under general principles of unjust enrichment and, alternatively, co-ownership. See Record Document 24. The Chesapeake Defendants contend that La R.S. 30:10 is inapplicable to the instant matter, as such statute is limited to development and operation costs and does not address post-production costs. The UMO Plaintiffs opposed the motion and filed their own cross-motion, arguing that general principles of co-ownership and unjust enrichment cannot supersede the positive statutory law governing their payment rights. See Record Document 28. They contend that the statutory scheme set forth in La. R.S. 30:10 as a

whole governs and that post-production costs are not among the exclusive list of expenses deductible against unleased owners, as set forth in Section 10(A)(3).

## LAW AND ANALYSIS

**A.  Partial Summary Judgment Standard.**

Rule 56(a) provides, in pertinent part:

Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).[2] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could

---

[2]The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and Advisory Committee Notes.

not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

**B.      Relevant Statutes.**

La. R.S. 30:10 governs agreements for drilling units and pooling interests.[3] Section 30:10(A)(2) provides:

> In the event pooling is required, the cost of development and operation of the pooled unit chargeable to the owners therein shall be determined and recovered *as provided herein*.

La. R.S. 30:10(A)(2) (emphasis added). Thus, under Section 10(A)(2), the costs of development and operation are chargeable to the owners within a unit. An owner is defined in Section 3(8) as "the person, including operators and producers acting on behalf of the person, who has or had the right to drill into and to produce from a pool and to appropriate the production either for himself or for others." La. R.S. 30:8(3). This definition includes unleased mineral owners. All owners, including unleased mineral owners, are responsible for "the actual reasonable expenditures incurred in drilling,

---

[3]During oral arguments, the UMO Plaintiffs noted that La. R.S. 30:10 was amended in both 2012 and 2016. Because the wells at issue in this case were drilled in 2009, the UMO Plaintiffs believe that the 2009 version of the statute governs. The UMO Plaintiffs concede that none of the amendments were substantively different than previous versions. Out of an abundance of caution, the Court has attempted to cite to the 2009 version of the statute.

testing, completing, equipping, and operating the unit well, including a charge for supervision, together with a risk charge." La. R.S. 30:10(A)(2)(b)(i). Section 10(A)(2)(e) later provides that "the provisions of Paragraph 2(b) above with respect to the risk charge shall not apply to any unleased interest not subject to an oil, gas, and mineral lease." Finally, Section 10(A)(3) provides:

> If there is included in any unit created by the commissioner of conservation one or more *unleased interests* for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator *shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale*.

La. R.S. 30:10(A)(3) (emphasis added).

**C.    Rules of Statutory Construction.**

"It is a fundamental principle of statutory interpretation that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied a written, and no further interpretation may be made in search of the intent of the legislature." McLane S., Inc. v. Bridges, 2011-1141 (La. 1/24/12), 84 So.3d 479, 483; see also La. C.C. Art. 9. It is also a "fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." Id. at 485. If "the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. Art. 10. Additionally, "words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and

appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." La. R.S. 1:3.

**D.     Analysis.**

The parties agree that the issue before the Court is *res nova* because there is no controlling Louisiana case law that deals with the specific facts as presented in this case. The key distinction in this dispute is the status of Plaintiffs as unleased mineral owners. The Chesapeake Defendants argue that La. R.S. 30:10 covers costs incurred by the operator prior to, but not beyond, the point of production. They contend that the post-production costs at issue can be assessed against the UMO Plaintiffs pursuant to unjust enrichment or, alternatively, co-ownership. The Chesapeake Defendants rely upon Louisiana Civil Code Articles 4, 2054, and 2055 and Louisiana case law[4] to support their unjust enrichment argument. Alternatively, the Chesapeake Defendants point to Amoco Prod. Co. v. Thompson, 516 So. 2d 376 (La. App. 1 Cir. 1987), to support their contention that principles of co-ownership support the right of the operator to be reimbursed for post-production costs. The Chesapeake Defendants argue that any other result would lead to absurd consequences, namely the UMO Plaintiffs enjoying a "free ride."

The UMO Plaintiffs argue that resolution of the instant cross-motions involves a straightforward application of Louisiana statutory law. They ask the Court to compare Section 10(A)(2) and Section 10(A)(3) and note the distinctions between unleased

---

[4]See Huckabay v. Texas Co., 227 La. 191, 78 So. 2d 829 (1955); Superior Oil Co. v. Humble Oil & Ref. Co., 165 So. 2d 905 (La. App. 4 Cir.), writ refused, 246 La. 842, 167 So. 2d 668 (La. 1964); Scott v. Hunt Oil Co., 152 So. 2d 599 (La. App. 2 Cir. 1962), on appeal after remand, 160 So.2d 433 (La. App. 2 Cir.), writ denied, 162 So.2d 8 (La. 1964); Willis v. Int'l Oil & Gas Corp., 541 So. 2d 332 (La. App. 2 Cir. 1989).

mineral owners and the nonoperating working interest owners that "permeate" La. R.S. 30:10. As noted by the UMO Plaintiffs during oral argument, the Louisiana Legislature amended La. R.S. 30:10 to address the entitlement of unleased owners to share in the production form the unit. This led to the passage of Section 10(A)(3) in 1984.[5] The UMO Plaintiffs urge the Court to use Section 10(A)(3) as the starting point of its analysis.

The UMO Plaintiffs assert that Louisiana law has a specific statutory provision that governs what an unleased owner is to be paid for production from a compulsory unit, that is, La. R.S. 30:10(A)(3). Pursuant to Section 10(A)(3), the unleased owner is entitled to be paid his tract's "pro rata share of the proceeds of the sale of production." According to the UMO Plaintiffs, no other costs are listed in the statute as recoverable against unleased owners. The Court agrees and finds that Section 10(A)(3) is clear and unambiguous. See McLane S., Inc., 84 So.3d at 483; La. C.C. Art. 9.

The text of Section 10(A)(3) is the first and best evidence of legislative intent. See La. R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."); State v. Shaw, 2006-2467 (La. 2007), 969 So.2d 1233, 1242. An unleased owner is to be paid the "pro rata share of the proceeds of the sale of production." La. R.S. 30:10(A)(3). The Legislature could have phrased Section 10(A)(3) differently to authorize the deduction of post-production costs such as processing and transportation; yet, it did not and the plain language of Section 10(A)(3) does not include post-production expenses as permissible deductions. The Chesapeake Defendants argue that Section 30:10(A)(3) is nothing more than a provision directing the time period within which operators must pay the unleased

---

[5] La. R.S. 30:10 was amended by Acts 1984, No. 345. See Shanks v. Exxon Corp., 95-2164 (La. App. 1 Cir. 5/10/96), 674 So. 2d 473, n. 5.

owners. However, the Court is not so convinced and believes this statutory provision directs both when an unleased mineral owner is to be paid and what he is to be paid – the payment of sales proceeds.

The Court finds further support for its conclusion in the statute as a whole, as the distinction between unleased mineral owners and nonparticipating working interest owners is also evident in other areas of the statute. Section 10(A)(2) applies an inclusive and all-encompassing definition of owners and, thus, has broad application. The Legislature was very clear in its enumeration of a specific set of costs in Section 10(A)(2). Conversely, Section 10(A)(3) is narrow and applies only to unleased owners. There is no enumeration of costs in Section 10(A)(3).[6] Moreover, unleased mineral owners are exempted from the risk charge. See La. R.S. 30:10(A)(2)(e). As argued by the UMO Plaintiffs during oral argument, this Court agrees that it does appear that with its amendments to La. R.S. 30:10 in 1984, the Legislature pulled unleased mineral owners out of the "morass."[7] This legislative action likely recognized that unleased mineral owners have been made a part of the unit and are generally going to be less sophisticated parties. In their briefing, the UMO Plaintiffs noted that unleased mineral owners are the

---

[6]During oral argument, Chesapeake argued that Section 10(A)(3)'s reference to unleased interest rather than unleased owner means there is only a property/in rem interest, not a personal interest. The Court is unpersuaded by this argument and finds that this is a distinction without difference. It is clear to the Court that the lack of a mineral lease is the defining characteristic, not whether the Legislature chose to employ the word interest over owner.

[7]Citing La. R.S. 30:10(A)(3), the Louisiana Supreme Court stated, "We note that the legislature has statutorily resolved the gas imbalance issue where an unleased owner is involved." Hunt Oil Co. v. Batchelor, 93-3144 (La. 10/17/94), 644 So. 2d 191, 200.

only parties in the unit who have not voluntarily engaged themselves in mineral exploration.  See Record Document 47 at 15.  The UMO Plaintiffs further noted:

> The unleased owner involuntarily loses all of his inherent rights to explore – or not explore – his own property.  He must still pay all development and operations costs if he is to see economic benefit from the compulsory pooling to which he is subject.  A strict construction of the Statute simply means that, for all of this, he is given the equivalent of a "no cost" royalty clause on production proceeds.  This is hardly unjust.

Id.  In Adams v. Chesapeake Operating, Inc., 561 F. App'x 322 (5th Cir. 2014), the Fifth Circuit observed:

> Contrary to Adams's argument that this interpretation leaves unleased mineral interest owners without protection, we note that unleased mineral interest owners are not unprotected.  Indeed, there are alternative actions available to Adams through which he can seek to recover production payments. *See, e.g.,* La.Rev.Stat. Ann. § 30:10(A)(3).

Id. at 327.  Therefore, the idea that the Legislature would treat unleased mineral owners differently and that such treatment would be reflected in La. R.S. 30:10(A)(3) is not absurd.

The Court need not reach the Chesapeake Defendants' arguments based on unjust enrichment and co-ownership as the Legislature has provided a specific rule for this situation.  See La. C.C. Art. 4 ("When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.").  Notwithstanding, the Court does observe that all but one of the cases cited by the Chesapeake Defendants to support the application of unjust enrichment predates the passage of Section 10(A)(3) in 1984.  Moreover, there is Louisiana case law stating, at least in *dicta*, that "a claim for unjust enrichment cannot be employed to modify the positive law as stated in LSA-R.S.

30:10(A)(3)." Taylor v. Smith, 619 So. 2d 881, 886 (La. Ct. App.), writ denied, 625 So.2d 1038 (La. 1993), citing Taylor v. Woodpecker Corp., 562 So.2d 888 (La. 1990).

**CONCLUSION**

Based on the foregoing analysis, the Court finds that La. R.S. 30:10(A)(3) governs the instant dispute. Because the Legislature has provided a statutory scheme, this Court will not resort to equity or other principles of Louisiana law to modify or supplement the statute. Under Section 10(A)(3), post-production costs cannot be recovered by an operator from an unleased mineral owner's share of production proceeds. Accordingly, the UMO Plaintiffs' Cross-Motion for Partial Summary Judgment (Record Document 28) is **GRANTED** and the Chesapeake Defendants' Motion for Partial Summary Judgment (Record Document 24) is **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 21st day of March, 2019.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT